UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
AT DAVENPORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:20-cr-70 |
| | ) | |
| vs. | ) | |
| | ) | |
| ISAIAH MICHAEL MCALLISTER, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| Defendant. | ) | |

COMES NOW Defendant Isaiah McAllister, by and through his attorneys Andrea D. Jaeger of Keegan, Tindal, & Jaeger, and for his Sentencing Memorandum addressing the factors to be considered in imposing Defendant's sentence under 18 U.S.C. § 3553(a), states as follows:

## A.  OBJECTIONS TO THE PSR AND GUIDELINES ISSUES

1.      Defendant persists in his objection to Paragraph 11 and denies the accuracy of the reported statement attributed to him.

2.      Defendant persists in his objection to the attribution of the "in connection with another felony offense," Carrying Weapons, enhancement pursuant to USSG § 2K2.1(b)(6)(B).

3.      Defendant objects to the Government's request for an obstruction enhancement pursuant to USSG § 3C1.1.

*Four-point enhancement pursuant to § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense, to wit: Iowa charge of Carrying Weapons*

4.      Defendant is assessed a four-point enhancement pursuant to USSG § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense.  Here, that felony offense is the Iowa charge of Carrying Weapons.

5.      Defendant concedes this Court must follow Eighth Circuit precedent, including *U.S. v. Walker*, 771 F.3d 449 (8th Cir. 2014).  However, Defendant maintains his objection on the

following bases: *Walker* was wrongly decided and should be overturned by the Eighth Circuit *en banc*;[1] this Court should nevertheless depart from the enhancement based upon policy disagreement; and this Court should vary because of the disproportionate result of application of this enhancement compared to similarly situated defendants and application of the enhancement creates an overly harsh result when considering the goals of sentencing.

6.      USSG § 2K2.1(b)(6)(B) provides a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense…."   Iowa Code Section 724.4(1), for the offense of Carrying Weapons, states:

> Except as otherwise provided in this section, a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor.

Iowa Code Section 724.4(1).  Under federal law, an Iowa aggravated misdemeanor is classified as a felony.  *United States v. Phillips*, 633 F.3d 1147, 1148 (8th Cir. 2011) (Iowa Code Section 903.1(2) reflects a punishment of up to two years imprisonment, thus it is a felony offense for federal purposes).

7.      In *Walker*, a three-judge panel determined application of the four-point enhancement did not constitute impermissible double-counting under the Guidelines because a defendant is "not 'doomed to automatically commit the additional felony [of Iowa Code Section 724.4(1) carrying weapons] when he violated 18 U.S.C. § 922(g) by possessing a firearm as a felon.'"  *Walker*, 771 F.3d at 452–53 (citation omitted).  *Walker* addressed only a challenge as to

---

[1] This argument is included herein for preservation purposes.  Defendant maintains the grounds cited by the panel in *Walker*, i.e., the enhancement is not double counting under the Guidelines, are incorrect and application of the enhancement does constitute impermissible double counting.

double-counting; it did not address the resulting disproportionate effect of the enhancement as an Iowa-only enhancement.  The continuing propriety of *Walker* has not been considered *en banc*.

8.     The Circuit has reviewed continued challenges to application of the enhancement on the basis it constitutes impermissible double counting.  In these cases, the Circuit notes it is bound by its prior precedent in *Walker* as overturning *Walker* would require the Circuit to sit *en banc*.  At the same time, *Walker*'s holding has been subject to criticism, including by those on the Circuit.   In *United States v. Stuckey*, a three-member panel recognized *Walker* as binding precedent.  *U.S. v. Stuckey*, 729 Fed.Appx. 494, 495 (8th Cir. 2018).  Two of the three panel members, however, signed a concurrence; Judge Grasz's concurrence, joined by Judge Melloy, states:

> I agree we are bound by *United States v. Walker*, 771 F.3d 449 (8th Cir. 2014).  I write separately because I believe *Walker* was incorrectly decided.  As expressed by Judge Melloy and Judge Bye in prior cases dealing with this issue, 'because 18 U.S.C. § 922(g)(1) and Iowa Code § 724.4(1) require essentially the same conduct, applying a sentencing enhancement based on the Iowa offense constitutes impermissible double counting.'  *United States v. Boots*, 816 F.3d 971, 976 (8th Cir. 2016) (Melloy, J., concurring) (citing *United States v. Sanford*, 814 F.3d 708, 714–17 (8th Cir. 2016) (Bye, J., concurring)).
>
> I recognize the Iowa law technically has additional elements beyond the federal offense.  *See United States v. Maldonado*, 864 F.3d 893, 901–02 (8th Cir. 2017) (explaining that in addition to possessing the firearm, the Iowa law requires that the defendant conceal the weapon, or be armed with a handgun within city limits, or knowingly carry or transport a handgun in a vehicle), *cert. denied*, — U.S. —, 138 s. Ct. 702, 199 L.Ed.2d 576 (2018).  Yet, the reality is that most felons in possession of a firearm will inevitably violate one of those requirements.  Here, for example, Stuckey violated Iowa's law because he possessed a firearm within the city limits of Cedar Rapids.
>
> In my view, the sentence enhancement set forth in USSG § 2K2.1(b)(6)(B) should not be available in circumstances such as this, where Stuckey's act of possessing the firearm in violation of federal law is inextricably entwined with his act of possessing a firearm within city limits in violation of Iowa law.  Increasing Stuckey's sentence 'because he was present in a city rather than in the country…does not further the purpose of the 'other felony' enhancement, and I find it hard to believe the Sentencing Commission would have intended such a result

either.' *Sanford*, 813 F.3d at 718 (Bye, J., concurring).

I would urge the Court, sitting en banc, to reconsider the holding in *Walker*.

*Id.* at 495–96 (Grasz, J., Melloy, J., concurrence).  This same sentiment was repeated in *U.S. v.*

*Odem*.  No. 19-1599 (8th Cir. April 14, 2020).  Reviewing whether application of the enhancement

constituted impermissible double counting, the panel noted it is bound by its precedent in *Walker*.

*U.S. v. Odem*.  No. 19-1599 at p. 2 (8th Cir. April 14, 2020).  Judge Grasz's concurrence noted

> While I agree Odem's claim of improper 'double counting' cannot prevail in light
> of [*Walker*], the facts of this case highlight the need to reconsider *Walker*.  Odem
> is receiving U.S.S.G. § 2K2.1(b)(6)(B)'s four-level enhancement for no practical
> reason other than that he violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2) within
> Newton, Iowa, city limits.  Odem is apparently no angel, at least judgment by his
> past record.  Yet, the law should not be applied arbitrarily even to one whose
> behavior might seem deserving of a harsh sentence.  The facts of this case help
> demonstrate the absurd results produced by application of the four-level base
> enhancement pursuant to *Walker*.
> …
> I maintain the four-level enhancement should not be available in circumstances
> where the 'act of possessing a firearm in violation of federal law is inextricably
> entwined with [the] act of possessing a firearm within city limits in violation of
> Iowa law.'  Increasing sentences in these circumstances does not further the purpose
> of U.S.S.G. § 2K2.1(b)(6)(B), and I doubt the sentencing commission intended this
> result.

*Id.* at pp. 3–4 (internal citations omitted) (Grasz, J., concurrence).  The same calls for

reconsideration are found in *U.S. v. Sanford* and *U.S. v. Boots*.  *See U.S. v. Sanford*, 813 F.3d 708,

715–18 (8th Cir. 2016) (Bye, J., concurrence) ("in the future I encourage this Court, sitting en

banc, to revisit its holding in [*Walker*], which I believe is inconsistent with our Court's

interpretation of [USSG] § 2K2.1(b)(6)(B). … Because Sanford's violation of 18 U.S.C.. §

922(g)(1) consisted of 'essentially the same conduct' … as his violation of Iowa Code §

724(4)(1)…, I do not believe that under U.S.S.G. § 2K2.1(b)(6)(B) Sanford's violation of Iowa

law should be considered 'another felony'  It is the same felony.  I also believe this enhancement

impermissibly double counts the same conduct. … Increasing Sanford's guideline range by two-

and-a-half-years because he was present in a city rather than in the country—or because he concealed the firearm under the passenger seat rather than carrying it in the open—does not further the purpose of the 'other felony' enhancement, and I find it hard to believe the Sentencing Commission would have intended such a result either. Therefore, this enhancement impermissibly double counts the same conduct.  To the extent *Walker* held a violation of Iowa Code § 724.4(1) is 'another felony' under U.S.S.G. § 2K2.1(b)(6)(B), I believe this categorical statement is overly broad, as the facts of this case illustrate.  I therefore encourage this Court, sitting en banc, to revisit its holding in *Walker*." (internal citations omitted)); *U.S. v. Boots*, 816 F.3d 971, 975 (2016) (Melloy, J., concurrence) ("I believe *Walker* improperly interpreted….Accordingly, I urge the Court to reconsider its holding in *Walker*.").

9.      A survey of all states within the 8th Circuit reveals Iowa is the only state in which the crime of carrying weapons is punishable by more than one year.  Stated differently, Iowa is the only state which punishes the offense by a term of imprisonment meeting the federal felony definition and so the only state where the enhancement applies.

Arkansas

In Arkansas, a "person commits the offense of carrying a weapon if he or she possesses a handgun, knife, or club on or about his or her person in a vehicle occupied by him or her, or otherwise readily available for use with a purpose to attempt to unlawfully employ the handgun, knife, or club as a weapon against a person."  A.C.A. § 5-73-120(a).  A violation of this statute is a Class A misdemeanor.  A.C.A. § 5-73-120(d).  A Class A misdemeanor is punishable by term of incarceration which does not exceed one year.  A.C.A. § 5-4-401(b)(1).

Since the maximum possible sentence does not exceed one-year, an Arkansas conviction for a like offense does not meet the federal definition of a felony.  As such, the enhancement, if

the case originates in Arkansas, would not apply.

Minnesota

In Minnesota, a person is guilty of carrying weapons where, without permit, the person "carries, holds or possesses a pistol in a motor vehicle, snowmobile, or boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place." Minnesota Code § 624.714(1)(a). A first offense is a gross misdemeanor. *Id.* The maximum possible sentence for a gross misdemeanor is up to one year. Minnesota Code § 609.02.

Like Arkansas, the Minnesota conviction would not be a felony offense for federal purposes, and as a result, the four-level enhancement would not apply.

Missouri

Missouri law is very limited in its application of situations and acts wherein carrying a weapon is illegal. In fact, there are a number of exceptions and exclusions to any categorization of illegality. Further, permits may be issued which except the otherwise illegal act, even when it falls within a categorization for something which would otherwise be criminal. Put more simply than the Missouri Code, the offense most akin to Iowa Code Section 724.4 is Missouri Code Section 571.030(1)(1), which provides, in part: "A person commits the offense of unlawful use of weapons, except as otherwise provided by sections 571.101 to 571.121, if he or she knowingly (1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use into any area where firearms are restricted under section 571.107[.]" Mo. Rev. Stat. Ann. Section 571.030. If violated, though, this subsection constitutes a class B misdemeanor, punishable by not more than six months' incarceration. *Id.* at (8)(2); *id.* at 558.011(1)(7). As such, a Missouri conviction would not be a felony offense, and the four-level enhancement would not apply.

Nebraska

Nebraska Revised Statute § 28-1202 states "Except as otherwise provided in this section, any person who carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapons, commits the offense of carrying a concealed weapon."  Nebraska Revised Statute § 28-1202.  A first offense violation is a Class I misdemeanor.  A Class I misdemeanor is punishable by up to one year of incarceration. *See* Nebraska Revised Statute § 28-106.

Again, the four-level enhancement is not applicable in Nebraska.

North Dakota

North Dakota's statute is broad.  Pursuant to NDCC § 62.1-02-10, "An individual may not keep or carry a loaded firearm in or on any motor vehicle, including an off-highway vehicle or snowmobile in this state. An individual violating this section is guilty of an infraction."  NDCC § 62.1-02-10 (also noting exceptions); *see also* Constitutional Concealed Carry, North Dakota Attorney General, available at https://attorneygeneral.nd.gov/public-safety/constitutional-concealed-carry.  An infraction is subject only to a fine.  *See* NDCC § 12.1-32-01.

The four-level enhancement is not applicable in North Dakota.

South Dakota

South Dakota is an open carry state, which does not require a permit for either residents or nonresidents to carry concealed pistols.  S.D. Codified Laws Section 23-7-7, 23-7-7.4; *see also* Concealed Pistol Permits, South Dakota Secretary of State, available at https://sdsos.gov/general-services/concealed-pistol-permits/default.aspx; *see also Gov. Noem signs 'Constitutional carry' of concealed handguns without permits into law*, Lisa Kaczke, Argus Leader, Jan. 31, 2019, available at https://www.argusleader.com/story/news/2019/01/31/gov-kristi-noem-signs-

constitutional-carry-into-law-south-dakota/2730395002/.  As such, South Dakota does not have an offense similar to Iowa's 724.4(1), and the four-level enhancement would not apply.

10.     In summary, it appears the four-level enhancement routinely applied to felon in possession cases in the Northern and Southern Districts of Iowa is a uniquely-Iowa enhancement. Defendants in Iowa receive the detriment of this four-level enhancement; in any other state within the Eighth Circuit, the same defendant, for the same conduct, would not be subject to such an increase in penalty.  Put simply:  defendants in Iowa, based upon geography alone, serve longer terms of incarceration than others in the Circuit for the exact same conduct.  Indeed, Iowa's federal districts apply the enhancement at rates substantially higher than the other districts in the Eighth Circuit.   *See* data available at   https://www.ussc.gov/research/datafiles/commission-datafiles. Plainly, this result could not have been intended.  Nor is the mere political boundary of the Iowa state line sufficient justification to substantially increase one's sentence for the same conduct.

11.     The stark difference in application of the § 2K2.1(b)(6)(B) enhancement is even more apparent when one considers the remainder of the nation.  While various state laws may include additional factors[2] which aggravate the offense, few states categorize a first offense comparable to Iowa's Carrying Weapons, without more, as a felony such the enhancement would apply.  Further, even where the offense is classified as a felony by state law, circuit precedent often indicates the enhancement does not apply or demonstrates the enhancement is not, in practice, applied in a manner akin to Iowa.[3]

---

[2] For example, such additional facts, not included in Iowa's offense for Carrying Weapons, could include:  the firearm is stolen; the firearm is loaded; the person has been convicted of a prior felony or certain prior offenses; the person is active in a street gang; the location is a school zone; etc.

[3] Due to the volume of citations, the State citations referenced herein are attached as Exhibit A.

D.C. Circuit

The District of Columbia defines a comparable offense as a misdemeanor, such the enhancement would not apply, but sometimes also defines a comparable offense as a felony, apparently based upon the ownership of the premises. But, Defendant could locate no case in the D.C. Circuit applying the enhancement in a manner akin to Iowa. *See, e.g.*, *U.S. v. Blalock*, 571 F.3d 1282, 1288 (D.C. Cir. 2009) (drugs); *U.S. v. Miller*, 395 F.3d 452, 456 (D.C. Cir. 2005), *vacated on other grounds by Miller v. U.S.*, 545 U.S. 1101 (2005) (drugs); *U.S. v. Hart*, 324 F.3d 740, 745 (D.C. Cir. 2003) (homicide). Thus, while the enhancement applies in Iowa, it apparently does not in the District of Columbia.

First Circuit

Maine[4] defines a comparable offense as a misdemeanor, such the enhancement cannot apply.

New Hampshire is a "constitutional carry" state. There is no comparable offense in New Hampshire, and the enhancement would not apply.

Massachusetts and Rhode Island classify a comparable offense as a felony such the enhancement could presumably apply. Puerto Rico's most comparable offense can be either a misdemeanor or a felony, apparently depending on whether the individual is 'transporting' or 'carrying' the weapon and other factors.

Despite the presence of comparable offenses, Defendant could locate no case within the First Circuit applying the enhancement in a manner akin to Iowa. In all cases located, the enhancement is applied for some other felony, beyond the possession of the firearm. *See, e.g.*,

---

[4] Maine is a "constitutional carry" state and does not have a comparable offense. However, the most comparable offense is classified as a misdemeanor.

*U.S. v. Oliveira*, 907 F.3d 88, 91–93 (1st Cir. 2018) (drugs); *U.S. v. Matthews*, 749 F.3d 99, 106 (1st Cir. 2014) (same).  Indeed, the District of Maine noted the enhancement is not applicable in cases where the 'other felony' relates to other firearms possession or trafficking offenses, *U.S. v. Martel*, 324 F. Supp. 2d 24, 26 (D. Maine 2004) ("other gun-related felonies may not serve as predicate offenses under section 2K2.1(b)(5) [now (b)(6)(b)]), and the circuit has held the coincidental presence of a gun near a crime scene is not sufficient to warrant the enhancement, *U.S. v. Paneto*, 661 F.3d 709, 716–17 (1st Cir. 2011) (citation omitted).").

Thus, it appears the enhancement is not applicable in the First Circuit as it is in Iowa, and the enhancement remains uniquely Iowan.

<u>Second Circuit</u>

Vermont is a "constitutional carry" state.  All defined weapons offenses require some extra aggravating factor not present in the Iowa statute; as such, Vermont does not have a comparable offense, and the enhancement would not apply.

Connecticut classifies the comparable offense as a felony.  New York has a statute which defines the comparable offense as a misdemeanor, which would fall outside the enhancement; but, New York also has a later-enacted statute defining a comparable offense as a felony, which could fall inside the enhancement, but which failed to repeal the misdemeanor statute.

However, Defendant can locate no case in the Second Circuit applying the enhancement in a manner akin to *Walker* and Iowa's Carrying Weapons.  Rather, cases out of the Second Circuit apply the enhancement to some other felony, not premised upon mere possession, with other aggravating factors.  *See, e.g.*, *U.S. v. Keith*, 797 Fed.Appx. 649 (2d Cir. 2020) (drug sale); *U.S. v. Ryan*, 935 F.3d 40, 42–43 (2d Cir. 2019) (same); *U.S. v. Simmon*, 153 F. Supp. 3d 617 (S.D. NY 2015) (felony offense of coercion); *contrast with U.S. v. Legros*, 529 F.3d 470 (2d Cir. 2008)

(enhancement could not be imposed based on alleged reckless conduct of firing gun into air, which would be misdemeanor offense).  Indeed, the Second Circuit requires the firearm be more than present merely coincidentally to the other felony.  *U.S. v. Spurgeon*, 117 F.3d 641, 644 (2d Cir. 1997) (citations omitted) ("'So long as the government proves by a preponderance of the evidence that the firearm served some purpose with respect to the felonious conduct, ... [the] 'in connection with' requirement is satisfied; conversely, where the firearm's presence is merely coincidental to that conduct, the requirement is not met.'"); *accord Ryan*, 935 F.3d at 42.  As such, it does not appear the Second Circuit applies the enhancement in a manner akin to Iowa, nor does it appear the circuit could apply the enhancement in such a manner based upon *Spurgeon* and its progeny. In comparison, the enhancement only applies in Iowa.

Third Circuit

All three states in the Third Circuit classify offenses comparable to Iowa's Carrying Weapons as felonies.  As such, the enhancement could, in theory, apply.  However, it is clear, based on Third Circuit precedent, the enhancement would not be applied:

> However, even without regard to whether the Government met its burden to show that Hester tampered with evidence, the sentencing enhancement under (b)(6)(B) would not apply to Hester's circumstances as a matter of law. The Guidelines provide for a four-point offense level enhancement "[i]f the defendant ... used or possessed any firearm or ammunition *in connection with* another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed *in connection with* another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). Supreme Court precedent, this Court's case law, and the Guidelines all make clear that, in this particular context, the phrase to use or possess "in connection with" means the facilitation of the secondary felony offense.
> In *Smith v. United States*, the Supreme Court expressed concern that this enhancement, as enshrined in an earlier analogous provision, would be erroneously applied to defendants who committed subsequent felonies while merely also

possessing a firearm. 508 U.S. 223, 237-38, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). There, the Court emphasized that "the gun at least must facilitate, or have the potential of facilitating" the subsequent offense for the enhancement to apply. *Id.* at 238, 113 S.Ct. 2050.

Following this decision, the commentary to the Sentencing Guidelines was amended in 2006 to include, *inter alia*, Application Note 14, which clarified that the (b)(6)(B) enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1(b)(6)(B), cmt. n.14. Application Note 14 specifically cites burglary or drug trafficking offenses as those scenarios in which the enhancement might apply. *Id.*

We subsequently agreed with this understanding of the enhancement, holding that it applies when the defendant has "committed another felony offense ... that the firearm facilitated." *West*, 643 F.3d at 110. We clarified that, in the drug context, the enhancement typically applies in situations of trafficking, whereas mere possession of drugs by a person who also possessed a gun was insufficient. *West*, 643 F.3d at 113. We further admonished more generally that our past precedent "should not be read to imply that simply possessing a firearm during the commission of another felony offense is sufficient to invoke the enhancement of § 2K2.1(b)(6)." *West*, 643 F.3d at 115-16.

In *United States v. Keller*, mere months after we decided *West*, we permitted the enhancement's application where the firearm at issue had been used in the commission of a burglary. 666 F.3d at 107. There, we reasoned that burglary and felon in possession differed on an element-by-element basis. "[M]ore than mere possession of the firearm—brandishment or other use—was an integral aspect of the predicate offense." *Id.* at 106 (quoting *United States v. Navarro*, 476 F.3d 188, 196 (3d Cir. 2007) ). In reaching our conclusion we also relied on the 2006 amendment, finding that the Guidelines confirmed both that "facilitation" was a critical component of any predicate offense, and that "burglary" was the type of crime contemplated by the enhancement. *Id.* at 107.

Hester's possession of the firearm did not facilitate or enhance his ability to tamper with evidence in the manner contemplated by the Guidelines. He did not brandish or otherwise use the firearm to tamper with evidence; he merely possessed it. Indeed, Hester's purported evidence tampering was coextensive with the possession of the weapon itself. The Government argues that "Hester's possession of the firearm was not an integral aspect of the evidence tampering offense." Appellee Br. at 35. But had Hester not possessed the gun, there would be no

> discussion regarding whether he tampered with it and there would also be no underlying charge.
>
> Consistent with our clear precedent and the Guidelines commentary, we hold that applying the § 2K2.1(b)(6)(B) enhancement to a sentence for an underlying offense of possession of a weapon is improper when the alleged evidence tampering involves merely possessing that same weapon. Rather, in order for the enhancement to apply, the weapon must facilitate a subsequent felony offense of the kind contemplated by the Guidelines and our precedent. *West*, 643 F.3d at 110.

*U.S. v. Hester*, 910 F.3d 78, 89–90 (3d Cir. 2018) (footnotes omitted); *contrast with U.S. v. Korus*, 795 Fed.Appx. 863 (3d Cir. 2019) (enhancement warranted when coupled with state crimes of assault and terroristic threats); *U.S. v. Plowden*, 499 Fed.Appx. 160 (3d Cir. 2012) (drugs).  As such, the enhancement in § 2K2.1(b)(6)(b) would not apply to comparable cases in the Third Circuit, where the enhancement is predicated upon an offense that "involves merely possessing that same weapon," and the enhancement remains an Iowa-only enhancement.

<u>Fourth Circuit</u>

West Virginia is a "constitutional carry" state.  As such, West Virginia does not have a criminal offense comparable to Iowa's Carrying Weapons, and the enhancement would not apply.

Maryland, North Carolina, South Carolina, and Virginia classify comparable offenses as misdemeanors, and so the enhancement would not apply.

Additionally, it is clear in factual patterns akin to Iowa's Carrying Weapons, the enhancement would not apply:

> The Guidelines' text plainly states that to trigger the enhancement, the transfer of the firearm must be with the knowledge that it will be "used or possessed in connection with *another* felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). Thus, the Guidelines presume possession, and then present the additional requirement that the possession be "in connection" with some other felony offense. This two-fold requirement would seemingly exclude situations where, as here, the possession would be only "in connection" with the possession. Otherwise, the

Guidelines would have the absurd conclusion that something can be "in connection" with itself.

The purpose behind the enhancement also supports that "another felony offense" refers to more than an offense by someone who, simply upon transfer of a firearm, commits the offense of being a felon in possession of a firearm. The Fourth Circuit has stated that the § 2K2.1(b)(6)(B) enhancement is intended "to punish more severely a defendant who commits a separate felony offense that is rendered more dangerous by the presence of a firearm." *United States v. Davis*, 592 F. App'x 143, 144 (4th Cir. 2014). It is illogical that the offense of felon in possession of a firearm becomes more dangerous by the presence of a firearm because the possession is the offense.

The examples given by the Guidelines' commentary of when to apply the enhancement include when firearms helped facilitate the additional offenses of burglary, robbery, and illegal drugs. Indeed, the cases where the enhancement is applied are often when firearms were used in conjunction with drugs, robberies, or other additional felonies. *See United States v. Walker-Bey*, No. 18-4904, ⸺ Fed.Appx. ⸺, ⸺ – ⸺, 2020 WL 238275, at *3–4 (4th Cir. Jan. 15, 2020) (determining the § 2K2.1(b)(6)(B) enhancement applied where the defendant possessed a handgun in addition to bags of marijuana); *United States v. Barr*, 787 F. App'x 183, 184 (4th Cir. 2019) (affirming application of the § 2K2.1(b)(6)(B) enhancement where the defendant was convicted of being a felon in possession of a firearm and also used the firearm in connection with felony assault on a law enforcement officer); *United States v. Crandell*, 783 F. App'x 289, 291 (4th Cir. 2019) (affirming application of the § 2K2.1(b)(6)(B) enhancement for the other felony offense of robbery); *United States v. Souther*, 764 F. App'x 356–57 (4th Cir. 2019) (affirming application of the § 2K2.1(b)(6)(B) enhancement where "the district court reasonably inferred that [Defendant] possessed the firearm in connection with his possession of the controlled substances"); *United States v. Stallings*, 762 F. App'x 160, 163 (4th Cir.) (affirming application of the § 2K2.1(b)(6)(B) enhancement where "the district court found sufficient evidence to support a finding that the firearm was used in connection with drug trafficking"); *United States v. Perry*, 750 F. App'x 238, 239 (4th Cir. 2019) (affirming application of the § 2K2.1(b)(6)(B) enhancement where Defendant possessed the firearm in close proximity to the oxycodone).

*U.S. v. Buzzard*, No. ___ F. Supp. 3d ___, 2020 WL774303 at **1–2 (S.D.W. Va. Feb. 15, 2020)

(2:19-cr-00022) (as a matter of first impression, defendant's transfer of firearms to another felon did not qualify for enhancement).

The enhancement would not apply in the Fourth Circuit.

Fifth Circuit

The comparable offenses in Louisiana, Oklahoma,[5] Mississippi,[6] and Texas are again misdemeanors, not carrying sufficient maximum punishment to apply the enhancement. Examining the Fifth Circuit, the four-level enhancement routinely applied to Iowa cases again remains an Iowa-only enhancement.

Sixth Circuit

Kentucky,[7] Ohio, and Tennessee classify a comparable offense as a misdemeanor such the enhancement would not apply.

Michigan's comparable offense as a felony such the enhancement could apply.

However, the Sixth Circuit interprets the enhancement in a manner which would prevent application of the enhancement in factual scenarios like those found in cases following *Walker*. In *Sanders*, the circuit held the enhancement would not apply when defendant burglarized a pawn shop, stole firearms from the pawn shop, placed the stolen firearms and other goods in his car, and drove into Ohio, where he was stopped by law enforcement:[8]

> A logical reading of the § 2K2.1(b)(5) Guideline term "another felony offense"
> would at least require, as a condition precedent to the application of a major four

---

[5] Oklahoma is a "constitutional carry" state, so it does not have a comparable offense. As noted, the most comparable offense is a misdemeanor.

[6] Mississippi is a "constitutional carry" state, so it does not have a comparable offense. As noted, the most comparable offense is a misdemeanor.

[7] Kentucky is a "constitutional carry" state, so it does not have a comparable offense. However, as noted, the most comparable offense is a misdemeanor.

[8] Sanders was also apparently in possession of marijuana, as the Ohio State Trooper observed marijuana in plain view and, based on that, conducted a search of the vehicle, finding burglary tools, stolen firearms, and stolen electronics.

level guideline enhancement, a finding of a separation of time between the offense of conviction and the other felony offense, or a distinction of conduct between that occurring in the offense of conviction and the other felony offense. Otherwise, the word "another" is superfluous, and of no significance to the application of that provision. In the instant case, there was no separation of time, or distinction in conduct between the instant offense and the state burglary offense.

Most offenses can be prosecuted under multiple provisions of the federal and state laws. The mere fact that Defendant Sanders could also have been prosecuted for a state offense for his conduct at the time he committed the offense charged in the federal indictment does not support a finding that, under Guideline § 2K2.1(b)(5), he committed "another felony offense" when he burglarized the pawn shop. To adopt such a conclusion would permit the automatic application of this significant 4 level Guideline enhancement in almost every federal gun theft case. There is no evidence in the Guidelines that the Commission intended this significant enhancement to be applied in almost every firearm theft case.

…

Thus, we conclude that the Government has failed to meet its burden of proving that this enhancement applies to the instant fact situation. Neither the language of Guideline § 2K2.1(b)(5), nor that of Application Note 18 supports the interpretation that "another felony offense" includes the possibility of prosecution for a state offense arising from the same conduct.

…

There is no justification to authorize a scanning of state statutes to ascertain if this particular offense violated any additional criminal statutes, and then to utilize that finding to enhance the sentence on the ground that defendant had, then and there, also committed another felony offense.

*Sanders*, 162 F.3d at 398–402 (footnotes omitted).   Although *Sanders* pre-dated Guideline

amendment 691, *Sanders* remains the law in the Sixth Circuit.  *See, e.g.*, *U.S. v. Kilgore*, 749 F.3d

463, 463–65 (6th Cir. 2014) (no enhancement where felon/defendant stole two unloaded firearms

from police station because the law requires the "another felony offense" be separate and distinct

conduct from the underlying offense and the theft of the pistols converting defendant into a felon-

in-possession with a two-level enhancement for theft was not "another felony offense" on which

to base another enhancement, stating to do so would be double counting, and noting *Sanders* controlled and remains the law of the circuit despite changes to the application notes); *see also U.S. v. Jackson*, 877 F.3d 231, 237–38 (6th Cir. 2017) ("We have outlined a number of fact situations that can fall within the 'broad wording'…of this [enhancement]. … On the other hand, '[p]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of' the enhancement, as is the simple 'presence of drugs in a home under a firearm conviction.' … In other words, there must be…'a clear connection' between the gun that served as the basis for the conviction for felon in possession if a firearm and the gun possessed during the other offense that triggers the enhancement.'" And concluding the enhancement was not applicable (citations omitted)).

Because of the rationale in *Sanders* and its progeny, the enhancement would not apply to Michigan's comparable offense without some other, aggravating factor.  As such, the enhancement would not apply in the Sixth Circuit.

Seventh Circuit

Expanding the analysis to the Seventh Circuit, the four-level enhancement routinely applied to Iowa cases remains an Iowa-only enhancement.  In each of Illinois, Wisconsin, and Indiana, the comparable offenses are misdemeanors, carrying less than one year in jail.  As such, the Seventh Circuit does not apply the enhancement for an offense comparable to Iowa's Carrying Weapons.

Ninth Circuit

Alaska,[9] Arizona,[10] Idaho,[11] Montana, Oregon, Washington, and California[12] classify comparable offenses as misdemeanors, not punishable by more than one year; the enhancement would not apply.

Hawaii and Nevada classify the comparable offense as a felony such the enhancement could apply.  However, existing Ninth Circuit precedent makes clear the enhancement does not apply in cases where the offense is similar to Iowa's Carrying Weapons without some other aggravating factor, because the Ninth Circuit will not apply the enhancement for mere possession of a firearm.  *See, e.g.*, *Routon*, 24 F.3d at 819 ("the prosecution will have to make a greater showing than a defendant's mere possession of a firearm to obtain a section 2K2.1(b)(5) [now 2K2.1(b)(6)(B)] enhancement.  Instead, to the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated-*i.e.*, had some potential emboldening role in-a defendant's felonious conduct." (citations omitted)); *accord Hunter*, 784 Fed.Appx. at 542 (application of 2K2.1(b)(6)(B) turns on "whether 'the firearm or ammunition facilitated, or had the potential of facilitating, another felony, or, in other words, whether the firearm 'had some potential emboldening role in' the felony." (internal citations omitted)); *see also, e.g.*, *U.S. v. Falcon*, 553

---

[9] Alaska is a "constitutional carry" state, and so it does not have an offense comparable to Iowa's Carrying Weapons.  Where criminalized, it is a misdemeanor offense.

[10] Arizona is a so-called "constitutional carry" state, so it does not have an offense analogous to Carrying Weapons.  When criminalized, most analogous offense which does not require something more, like a crime of violence or a limited location, the offense is a misdemeanor.

[11] Idaho is a "constitutional carry" state, so it does not have an offense analogous to Carrying Weapons.  As noted, where criminalized, the most comparable offense is a misdemeanor.

[12] California has a variation of the offense which can be a felony, based upon whether the handgun is loaded.  However, no cases were located where the Ninth Circuit applied the enhancement, even where a defendant would qualify for a felony sentence.

Fed.Appx. 737, 738 (9th Cir. 2014) ("The sentencing court plainly erred in enhancing Falcon's specific offense characteristics under U.S.S.G. § 2K2.1(b)(6)(B) based on Falcon's possession of a firearm in connection with the sale of a stolen firearm. Under [*Valenzuela*], sale of a stolen firearm 'is a firearms trafficking or possession offense' that 'cannot be used' as a basis for the enhancement."); *U.S. v. Coffin*, 479 Fed.Appx. 103, 104 (9th Cir. 2012) (enhancement not warranted where defendant was convicted pursuant to 922(g)(1) and 924(a)(2) when defendant attacked officer with fists and took keys to officer's four-wheeler while carrying a rifle, stating "Mere possession of a gun during commission of an offense is not enough to prove that the gun was used in connection with another offense" and the record did not reflect sufficient evidence of "another felony offense"); *contrast with, e.g.*, *U.S. v. Navarro*, 756 Fed.Appx. 702, 705 (9th Cir. 2018) (citations omitted) ("Possession of methamphetamine is a class B felony in Washington State, and the proximity of the firearm to the methamphetamine permits an inference that possession of the firearm potentially emboldened the possession of the methamphetamine").

Whereas cases arising in Iowa will apply the § 2K2.1(b)(6)(B) enhancement, the Ninth Circuit will not do so for comparable offenses.  The enhancement remains an Iowa-only enhancement.

Tenth Circuit

In Colorado, Kansas,[13] New Mexico, Utah, and Wyoming,[14] again a comparable offense is classified as a misdemeanor not punishable by more than one year.

As such, the enhancement would not apply in any state in the Tenth Circuit.  Section

[13] Kansas is a "constitutional carry" state.  As such, it does not have a comparable offense to Carrying Weapons.  When criminalized, a comparable offense is a misdemeanor.
[14] Wyoming is a "constitutional carry" state.  It does not have a comparable offense to Carrying Weapons.  When criminalized, a comparable offense is a misdemeanor.

2K2.1(b)(6)(B) remains an Iowa-only enhancement when compared to the Tenth Circuit.

<u>Eleventh Circuit</u>

Alabama and Georgia classify the comparable offense as a misdemeanor, so the enhancement would not apply.

Florida classifies a comparable offense as a felony such the enhancement could apply.

However, after reviewing Eleventh Circuit precedent, Defendant could locate no case comparable to *Walker*; that is, Defendant could not locate any case applying the enhancement where the sole basis was the mere possession of a firearm.   Rather, in all cases applying the enhancement, there was some additional act.   By way of example, in *Truitt*, *Millan*, and *Carillo-Ayala*, the defendant possessed the gun with drugs and drug proceeds, and therefore the other felony enhancement was premised upon the connection to drug trafficking.   *U.S. v. Truitt*, 696 Fed.Appx. 391, 392–94 (11th Cir. 2017); *U.S. v. Millan*, 593 Fed.Appx. 946, 947–48 (11th Cir. 2014); *U.S. v. Carillo-Ayala*, 713 F.3d 82, 92 (11th 2013).   In *Gallegos*, the defendant possessed the gun in connection with a burglary.   *U.S. v. Gallegos*, 631 Fed.Appx. 875, 876–77, 79–80 (11th Cir. 2015).   In *Rhind*, the defendant possessed the gun in connection with a counterfeit money scheme.   *U.S. v. Rhind*, 289 F.3d 690, 691–92, 694–95 (11th Cir. 2002); *see also U.S. v. Johnson*, 433 Fed.Appx. 753 (11th Cir. 2011) (burglary); *U.S. v. Videa*, 754 Fed.Appx. 872, 877–78 (11th Cir. 2018) (no record support for an inference defendant knew he was selling weapon to a buyer who was going to engage in felony distribution of narcotics in violation of Florida law so enhancement did not apply); *U.S. v. Rogers*, 578 Fed.Appx. 911 (11th Cir. 2014) (aggravated assault under Florida law); *U.S. v. Brown*, 498 Fed.Appx. 940 (11th Cir. 2012) (aggravated assault under Florida law); *U.S. v. Hazel*, 389 Fed.Appx. 971 (11th Cir. 2010) (purchase of cocaine in violation of Florida law); *U.S. v. Clark*, 379 Fed.Appx. 855 (11th Cir. 2010) (burglary under

Florida law). Thus, while Florida's statute theoretically could support the enhancement, it does not. The Eleventh Circuit does not apply the enhancement in a manner akin to Iowa.

12.     As noted above, application of the § 2K2.1(b)(6)(B) enhancement has been subject to criticism within this Circuit. In *Stuckey*, Judge Grasz's concurrence, joined by Judge Melloy, hints at the disparate impact of this enhancement. *See U.S. v. Stuckey*, 729 Fed.Appx. at 495–96 (Grasz, J., Melloy, J., concurrence) ("Increasing Stuckey's sentence 'because he was present in a city rather than in the country…does not further the purpose of the 'other felony' enhancement, and I find it hard to believe the Sentencing Commission would have intended such a result either.' *Sanford*, 813 F.3d at 718 (Bye, J., concurring)."). In *Odem*, Judge Grasz's concurrence went further, noting "the law should not be applied arbitrarily even to one whose behavior might seem deserving of a harsh sentence. The facts of this case help demonstrate the absurd results produced by application of the four-level base enhancement pursuant to *Walker*." *U.S. v. Odem*, 804 Fed.Appx. 418, No. 19-1599 at p. 3 (Apr. 14, 2020) (Grasz, J., concurrence).

13.     When compared to the rest of the country, the enhancement can presumably apply in, at most, 11 states plus the District of Columbia and Puerto Rico. This means, at best, in only 25% of states, including the District of Columbia and Puerto Rico, can the enhancement even apply. This percentage is reduced further when one considers relevant case law and circuit application: then, the enhancement is applied in Iowa, and Iowa alone (1.9% of states).

14.     The Sentencing Guidelines were not intended to be applied in such a geographically disparate manner, and the enhancement of sentences in Iowa only runs contrary to the goals of sentencing. Rather, one of the principle purposes of sentencing is to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Put simply: defendants in Iowa, based upon geography

alone, serve longer terms of incarceration than others in the Circuit for the exact same conduct. Plainly, this result could not have been intended.  Nor is the mere political boundary of the Iowa state line sufficient justification to substantially increase one's sentence for the same conduct.

15.     "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.  That uniformity does not consist simply of similar sentences for those convicted of violations of the same statute…[i]t consists, more importantly, of similar relationships between sentences and real conduct…."  *U.S. v. Booker*, 543 U.S. 220, 253–54 (2005).  It is contrary to the statutory and constitutional goals of the guidelines to have an enhancement for one state, and one state only, particularly when that enhancement so dramatically impacts the guidelines for defendants in that state.

16.     Four additional levels constitute a significant increase in potential penalty.  Here, with the enhancement, Defendant's advisory USSG range is 27/V = 120–150 months.[15]  Without the enhancement, Defendant's advisory USSG range is 23/V = 84–105.  Thus, this enhancement, alone, increases Defendant's potential punishment between 15 and 36 months.[16]

17.     One may also consider the increase in punishment solely as a result of this enhancement compared to the punishment for the same behavior in the state system.  Pursuant to Iowa law, an aggravated misdemeanor is punishable by up to one year in county jail or two years in prison.  *See* Iowa Code § 903.1(2).  The sentence is indeterminate, meaning the Iowa Board of Parole has the authority to discharge a defendant from incarceration at any time it deems appropriate.  In 2019, the average duration of incarceration for the 28 individuals released on the offense of carrying weapons was 7.2 months.  See p. 31, Iowa Board of Parole FY19 Annual

---

[15] Which is capped at 120 per the statutory maximum.
[16] 120-84=36 months; 120-105=15 months.

Report                                      found                                      at

https://bop.iowa.gov/sites/default/files/documents/2019/12/iowa_board_of_parole_annual_report

_fy19.pdf.  In other words, the guidelines punish the offense several times more harshly than the

harshest state sentence for the same offense.  Here, the minimum increase in Defendant's advisory

USSG range is more than double the average duration of incarceration for an individual sentenced

for the offense of carrying weapons in the State of Iowa.

18.     "The plain meaning of legislation should be conclusive, except in the 'rare cases

[in which] the literal application of a statute will produce a result demonstrably at odds with the

intentions of its drafters.'  In such cases, the intention of the drafters, rather than the strict language,

controls."  *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic*

*Contractors Inc.*, 458 U.S. 564, 571 (1982)).  Here, the intention of the sentencing statutes and the

advisory Guidelines is to reduce disparity, strive for uniformity in similar offenses, and achieve a

sentence sufficient but not greater than necessary.  Application of the four-level enhancement,

which applies only in Iowa and increases the penalty of a comparable state sentence several times

over, runs contrary to these goals and produces an absurd result.  As such, this Court should depart

from the enhancement based upon policy disagreement; or, vary because of the disproportionate

result of application of the enhancement compared to similarly situated defendants and because

application of the enhancement creates an overly harsh result when considering the goals of

sentencing.

*Obstruction of Justice Enhancement Should Not Be Applied*

19.     The Government argues both an obstruction of justice enhancement and a reckless

endangerment during flight enhancement should apply, essentially for the same conduct.

Defendant objects to application of both enhancements.  Defendant agrees with the Probation

Office's analysis and asserts the reckless endangerment during flight enhancement adequately accounts for Defendant's conduct.

20.     Guideline 3C1.1 application note 5 provides a non-exhaustive list of conduct to which the enhancement does not normally apply.  Included therein is the avoidance or flight from arrest.  USSG § 3C1.1 app. n. 5(D) (but noting such may constitute reckless endangerment during flight).  Here, the conduct is exactly that:  Defendant's flight from law enforcement, which is adequately accounted for by the enhancement for reckless endangerment during flight.  Defendant disputes making the factual statement attributed to him.  Should the Court find this statement by a preponderance of the evidence, however, such statement was allegedly made during and in the course of conduct of Defendant's flight from law enforcement and a single course of conduct of Defendant's reckless endangerment.  Ratcheting up Defendant's sentence in the manner suggested by the Government, which would be outside of the heartland of cases intended when the Guidelines refer to "threatening a witness," is unduly and unnecessarily cumulative and punitive.  Application of both enhancements fails to accomplish the goals of sentencing.  Put simply, there is no need or basis for both enhancements; the conduct is adequately accounted for by a single enhancement.  Moreover, Guideline 3C1.2 covers all conduct during the flight.  Application note 3 to Guideline 3C1.2 notes the enhancement is "to be construed broadly" and even "includes preparation for flight."  USSG § 3C1.2  The enhancement for reckless endangerment during flight, given its broad construction, encompasses all actions taken during and in the course of flight and adequately accounts for the conduct here.

### B.  DEFENDANT'S CHARACTERISTICS AND "NEEDS" OF THE SENTENCE IMPOSED

21.     Defendant suffered physical abuse as a child and has, since his childhood, struggled with defiant disorder.  PSR ¶ 50.  As a result, Defendant grew up unable to regulate himself, often

running away and skipping school.  PSR ¶ 50.  Further, Defendant's home life suffered from a lack of stability, as the family often struggled financially and was unable to provide housing.  PSR ¶ 51.  Defendant entered the human services system and became a ward of the state.  PSR ¶ 52.  Defendant was placed in multiple residential facilities and foster homes, followed by an adolescent center and children's shelter.  PSR ¶ 53.  During this period of his childhood, Defendant struggled, and he was removed from some facilities and ran away from others.  PSR ¶ 53.  Now, still at the young age of 22, Defendant is realizing the "the impact his behavior has had on others.  He has been working to strengthen his relationship with his family and believes he is blessed to still have a strong friend and family support. … To remain successful in the future, the defendant hopes to maintain strong bonds with his family."  PSR ¶¶ 54–55.  Defendant also seeks health services, substance abuse treatment, and education.  PSR ¶ 55.  Defendant respectfully suggests lengthy incarceration is not necessary to promote respect for the law, to afford adequate deterrence, or to protect the public.  18 U.S.C. § 3553(a)(2)(A)–(C).  Defendant will benefit from obtaining his GED, vocational training, mental health treatment, and substance abuse treatment.  Obtaining this education and training, along with needed substance abuse and mental health treatment, will allow Defendant the opportunity to focus his efforts on positive life skills and contribute meaningfully to society, particularly when one considers Defendant's existing employment skills.  *See* PSR ¶¶ 85–86.  Rehabilitation is possible and should be a primary goal in determining an appropriate disposition.  18 U.S.C. § 3553(a)(2)(B)–(C).

## C.  CONCLUSION

WHEREFORE Defendant respectfully requests he be sentenced in accordance with the foregoing.

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, and Jaeger
2322 E. Kimberly Rd., Ste. 140S
Davenport, IA 52807
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754
Email: andrea@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

Certificate of Service

The undersigned certifies that the foregoing instrument was electronically filed on March 15, 2021, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Andrea D. Jaeger*